```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

CORYN ANITA CASTRO,

                    Plaintiff,          1:16-CV-00989-MAT
        -v-                             DECISION AND ORDER

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.
_____
```

## INTRODUCTION

Coryn Anita Castro ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On December 19, 2011, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of January 5, 2010 due to bipolar disorder and lower back problems. Administrative Transcript ("T.") 224-33. The claims were initially denied on March 23, 2012. T. 86-87. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was scheduled for

May 22, 2012. Plaintiff did not appear at the hearing and subsequently her representative, Courtney L. Quinn, withdrew her representation. T. 91. ALJ Stanley A. Moskal, Jr., presided over the May 22, 2012, hearing and issued a dismissal on August 14, 2013. T. 88-2-92. The case was remanded by the Appeals Council, finding good cause for Plaintiff's failure to appear at her hearing, due to a typographical error in her address to which the hearing notice was sent. Returned mail indicated Plaintiff had not received notices regarding the hearing, and the record did not reflect Plaintiff's representative informed her of the hearing date. T. 93-94.

The Appeals Council directed the ALJ to hold another hearing, which was held on January 15, 2015, in Buffalo, New York. Plaintiff appeared *pro se* and a vocational expert ("VE") also testified. T. 38-64. The ALJ issued an unfavorable decision on June 29, 2015. T. 11-37. Plaintiff appealed the decision to the Appeals Council ("AC"), which denied Plaintiff's request for review on October 24, 2016, making the ALJ's decision the final decision of the Commissioner. T. 1-5. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2012. T. 16.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 5, 2010, the alleged onset date. *Id*. Although there was an indication that Plaintiff worked as a babysitter during the period at issue, the ALJ found this work activity did not rise to the level of substantial gainful activity. *Id*.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: back pathology; neck impairment; bipolar disorder; and anxiety disorder. T. 17. The ALJ also determined Plaintiff did not have a marijuana abuse condition and that her headaches and hypertension had no significant impact on Plaintiff's work-related functional abilities. Accordingly, the ALJ found these additional impairments to be non-severe. T. 17-18.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 18.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following additional limitations: can never climb ladders, ropes or scaffolds. T. 20.

At step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as an office helper. T. 29. In the alternative, at step five, the ALJ relied on the VE's testimony to

find that there are other jobs existing in the national economy Plaintiff is also able to perform, including the representative occupations of routing clerk and photocopy machine operator. T. 30. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 31.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172,

179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand of this matter is warranted because the ALJ inappropriately used his own opinion as to the definition of the term "moderate" in his posed hypotheticals and resulting RFC assessment of Plaintiff. This, Plaintiff argues, elicited testimony from the VE that does not constitute substantial evidence to support the ALJ's steps four and five findings. For the reasons discussed below, the Court finds Plaintiff's argument is without merit and affirms the Commissioner's final determination.

**I. The ALJ Permissibly Defined the Term "Moderate"**

Plaintiff argues the ALJ erred in his development of testimony from the VE by including his own opinion as to the definition of the term "moderate," improperly assuming that the opining doctors' usage of the term "moderate" corresponded to his own presented definition. Plaintiff contends this error was not harmless and thus warrants remand. The Court disagrees, for the reasons set forth below.

**A. Usage of the Term "Moderate" in the Medical Opinions of Record**

The record contains five medical opinions: the opinion of consultative psychiatric evaluator, Dr. Thomas Ryan (T. 325-28); the opinion of consultative internal medicine examiner, Dr. Gautam Arora (T. 329-32); the opinion of reviewing medical consultant, Dr. J. Echevarria (T. 337-54); the opinion of consultative

5

psychiatric evaluator, Dr. Janine Ippolito (T. 532-39); and the opinion of consultative internal medicine examiner, Dr. Samuel Balderman (T. 571-81). In his decision, the ALJ assigned significant weight to all five of the medical opinions. T. 29.

Doctors Ryan, Arora, Echevarria, and Ippolito all used the term "moderate" in their medical opinions. Specifically, Dr. Ryan opined Plaintiff "may have moderate difficulty performing complex tasks, making adequate decisions, at times relating with others, and dealing with stress." T. 327-28. Dr. Arora opined Plaintiff had "[m]oderate limitation of bending, twisting, lifting, and carrying." T. 331.

In a check-the-box mental RFC assessment form, Dr. Echevarria opined Plaintiff had moderate limitations in her abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting

behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting. T. 337-38.

Dr. Ippolito opined Plaintiff could "relate adequately with others and appropriately deal with stress with moderate limitation." T. 535. Dr. Ippolito also completed an assessment of Plaintiff's mental work-related activities, in which she opined Plaintiff had moderate limitations with her abilities to: interact appropriately with the public; interact appropriately with supervisors; interact appropriately with co-workers; and respond appropriately to usual work situations and to changes in a routine work setting. T. 538. This assessment defined the term "moderate" to mean "[t]here is more than a slight limitation in this area but the individual is still able to function satisfactorily." T. 537.

**B.   The ALJ's Definition of the Term "Moderate"**

Plaintiff contends that at the hearing, when posing hypotheticals to the VE, the ALJ defined "moderate" to mean "there is a moderate limitation in this area, but the individual is still able to function satisfactorily and there are no repeated episodes of deterioration each of extended duration." *See* T. 57. Plaintiff further argues that this "very specific" definition of the term moderate does not correlate with the opinions of Dr. Ryan, Dr. Ippolito, and Dr. Echevarria. The Court disagrees.

As an initial point, the Court finds Plaintiff misinterpreted the transcript. While the Plaintiff's version of the ALJ's

7

definition for "moderate" is an accurate quotation from the transcript, reading the full quotation in context, the Court finds that the ALJ was referencing two separate considerations - one being that "moderate" should be defined as the ability to function satisfactorily despite the limitations and second being that the claimant has had no repeated episodes of deterioration of extended duration. This reading of the ALJ's definition is supported by the record in multiple ways. First, in his RFC finding, the ALJ specifically defined "moderate" to mean "moderate limitations in this area but the person is still able to satisfactorily function" (T. 20) and second, this definition aligns exactly with the "moderate" definition provided in Dr. Ippolito's medical source statement T. 537), which the ALJ assigned great weight.

Moreover, even assuming *arguendo* that Plaintiff's interpretation of the transcript were correct, it is within the ALJ's discretion to define the term "moderate" when developing the RFC assessment. *See Huber v. Berryhill*, No: 16-CV-656-FPG, 2017 WL 3267572, at *4 (W.D.N.Y. Aug. 1, 2017) (finding that "it was within the ALJ's discretion to define the term 'moderate.'"). Moreover, "it is not required that the RFC assessment 'perfectly correspond' with [a doctor's] opinion." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Here, even accepting Plaintiff's interpretation of the ALJ's definition, the first half of the ALJ's definition corresponds with the definition provided in Dr. Ippolito's assessment. The remaining medical opinions provided

8

no definition of the term "moderate," leaving the ALJ to permissibly interpret its meaning. *See Huber* at *3 ("Although it is difficult to precisely define the term 'moderate,' '[i]f it is possible ... that prerogative lies exclusively with the Commissioner or a qualified expert witness, not a reviewing court.") (quoting *Reynolds v. Colvin*, No. 3:13-cv-396(GLS/ESH), 2014 WL 4184729, at *5 (N.D.N.Y. Aug. 21, 2014)). The Court finds no abuse of discretion in the ALJ's definition of the term "moderate," which was consistent with the medical opinions of record.

    **C.** **The Hypotheticals Posed to the Vocational Expert were Supported by Substantial Evidence and Accurately Reflect Plaintiff's Limitations and Capabilities**

Plaintiff further argues the VE's testimony cannot constitute substantial evidence to support the ALJ's steps four and five findings, because it was based on the ALJ's "very specific" definition of "moderate." This argument is without merit.

At step five of the sequential evaluation process (20 C.F.R. §§ 404.1520(g), 416.920(g))), the ALJ must determine whether the claimant is able to do any other work for which there are significant numbers in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. An ALJ may rely on a VE's testimony to make this determination, so long as the hypothetical(s) posed to the VE are supported by substantial record evidence and accurately reflect the

9

limitations and capabilities of the claimant. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014)(citations omitted).

As noted above, the ALJ posed two hypotheticals to the VE at the hearing; the second hypothetical included the ALJ's definition of "moderate." The VE testified that an individual with the limitations and background described in the ALJ's second hypothetical could perform the past relevant work of office helper. In addition to that past work, the VE testified that the hypothetical individual could also perform the jobs of routing clerk, and photocopying machine operator. T. 56-59.

A review of both the RFC finding and the second hypothetical posed to the VE at the hearing (which became the RFC finding) reveal the ALJ took, nearly verbatim, the limitations Dr. Echevarria marked as "moderate" on Plaintiff's Mental RFC Assessment. *Compare* T. 337-38 *with* T. 20 *and* T. 58-59. This strong reliance on a medical opinion, which was afforded great weight, constitutes the substantial evidence required to support a permissible RFC assessment and findings at steps four and five. Moreover, as previously noted, the ALJ used language almost identical to Dr. Ippolito's definition of "moderate" when applying the term to both the second hypothetical and the RFC finding. This consistency with Dr. Ippolito's opinion further supports the ALJ's step four and five findings that Plaintiff is capable of performing both her past relevant work and other jobs available in the national economy and thus, is not disabled.

For the reasons set forth above, the Court finds no error in the ALJ's use of the term "moderate" in his posed hypotheticals and resulting RFC finding. The Court further finds the testimony elicited from the VE constitutes substantial evidence in support of the ALJ's steps four and five findings. The Court accordingly finds that remand is not warranted.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 13) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 19) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/ Michael A. Telesca**

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   August 7, 2018
         Rochester, New York